1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   COMMUNITY RESOURCES FOR                Case No.  18-cv-06012-JSW
    INDEPENDENT LIVING, et al.,
8                                          **ORDER GRANTING MOTION FOR**
                  Plaintiffs,              **FINAL APPROVAL**
9
          v.                               Re: Dkt. No. 61
10
    MOBILITY WORKS OF CALIFORNIA,
11  LLC, et al.,

12                Defendants.

13

14        Now before the Court for consideration is the Plaintiffs' motion for final approval of a

15  class action settlement.  The Court has considered the parties' papers, relevant legal authority, and

16  the record in this case, and it held a final approval hearing on May 22, 2020.  There were no

17  objectors present at that hearing.  For the reasons set forth in the remainder of this Order, the Court

18  GRANTS the motion.[1]

19                                    **BACKGROUND**

20        Plaintiffs filed this class action lawsuit in October 2018 and allege that Mobility Works,

21  one of the country's largest providers of wheelchair accessible vehicles for sale or rent, and a

22  major installer of adaptive devices, employed two policies that discriminated against drivers with

23  disabilities.[2]  (Compl. ¶¶ 1-2, 27-31.)  First, Plaintiffs alleged that Mobility Works would not

24  install hand controls or other adaptive devices in rental cars when drivers with disabilities needed

25

26  _____
    [1]      The Court will address Plaintiffs' motion for attorneys' fees and costs in a separate Order.

27
    [2]      Adaptive devices include hand controls, which allow drivers to accelerate or brake using
28  their hands instead of their feet; steering knobs, which allow for one-handed steering; and pedal
    extensions, which allow drivers whose feet would not otherwise reach the pedals to drive.

and requested them.  (*Id.* ¶¶ 1-2, 27-28.)  Second, Plaintiffs alleged that before Mobility Works would install such devices in a vehicle, it required people with disabilities who needed them to undergo unnecessary and burdensome "certification" courses, which were not imposed on any nondisabled drivers.  (*Id.* ¶¶ 1-2, 29-31.)

Defendants do not admit these allegations and do not concede liability.  However, after nearly a year of negotiations, which included two private mediation sessions, multiple telephonic meetings, and several settlement proposals from each side, the parties reached an agreement on a proposed class-wide settlement (the "Agreement").

On March 6, 2020, the Court preliminarily approved the Agreement, found that final approval was likely, and directed notice to the settlement class (the "Preliminary Approval Order").  The parties subsequently disseminated notice, and they did not receive any objections.

**ANALYSIS**

Federal Rule of Civil Procedure 23(e) conditions the settlement of any class action on court approval, which is intended to ensure that the proposed settlement is "fair, adequate, and free from collusion."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 23(e)(2).  Because this settlement was reached prior to certification, the Court subjects it to a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required."[3]  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (discussing higher standard).

In order to make a final fairness determination, the Court must consider: (1) whether the class was adequately represented; (2) whether the proposed settlement was negotiated at arm's length; (3) whether the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the terms of any proposed award of attorneys' fees, and other

---

[3]     Before approving such settlements, courts must look not only for explicit evidence of collusion, but also for more "subtle signs" of self-interest, including (1) whether class counsel will receive "disproportionate distribution of the settlement," (2) whether the defendant has agreed not to object to class counsel's fee request, and (3) whether unclaimed funds will revert to the defendant.  *In re Bluetooth*, 654 F.3d. at 946.  This "more exacting" review is intended to ensure that "class representatives and their counsel do not secure a disproportionate benefit" at the expense of other class members.  *Roes 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (citation and internal quotations omitted).

United States District Court
Northern District of California

1    factors; and (4) whether the proposal treats class members equitably relative to one another.  Fed.

2    R. Civ. P. 23(e)(2); *see also Lane*, 696 F.3d at 819 (discussing pre-amendment factors set forth in

3    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)).  When the Court considers these

4    questions, it must be careful to "evaluate the fairness of a settlement as a whole, rather than

5    assessing its individual components," while remaining mindful that "the question whether a

6    settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question

7    whether the settlement is perfect in the estimation of the reviewing court."  *Lane*, 696 F.3d at 818-

8    19.

9            The Court has considered these factors and has examined the settlement process for subtle

10   signs of collusion, and the Court finds that final approval is appropriate.

11   **A.      The Parties' Agreement Will Provide Excellent Relief To Plaintiffs And The
             Settlement Class.**

12

13           In evaluating the substantive fairness of a proposed settlement, courts consider whether

14   "the relief provided for the class is adequate," "the costs, risks, and delay of trial and appeal," "the

15   terms of any proposed award of attorneys' fees," as well as other factors.  Fed. R. Civ. P.

16   23(e)(2)(C).  The Court concludes Plaintiffs obtained an excellent result on behalf of themselves

17   and the Settlement Class, and it concludes all relevant factors weigh in favor of approval.[4]

18           As discussed above, Plaintiffs' filed this case to address two issues: (1) Mobility Works'

19   alleged refusal to install hand controls or other adaptive devices in rental cars; and (2) its alleged

20   imposition of unnecessary and burdensome "certification" requirements on drivers with

21   disabilities.  The parties' settlement will completely and conclusively resolve both issues, to the

22   benefit of drivers with disabilities nationwide.

23           Under the Agreement, Mobility Works will install hand controls and other adaptive

24   equipment in any available rental vehicle upon request, at no charge to customers.  Therefore,

25   people with disabilities who need such devices will be able to rent and drive Mobility Works vans

26

27   [4]    This case concerns a Rule 23(b)(2) class, and Plaintiffs did not bring, litigate, settle, or
      release any damages claims.  Therefore, Rule 23(e)(2)(C)(ii) does not apply.  Rule 23(e)(2)(C)(iii)

28   is similarly inapplicable, because no separate agreement has been made in connection with the
      parties' settlement.

*United States District Court*
*Northern District of California*

independently, where before they were allegedly forced to either rely on a nondisabled driver, or to forego using the company's rental services entirely. (*See* Agreement at § 3.3.2.)[5]   In addition, Mobility Works will now allow drivers who need adaptive equipment installed in any vehicle to forego the prior "certification" requirement, provided that they have a valid license and can attest to their experience using the equipment they have requested. (*Id.* at §§ 3.2.1, 3.3.4.)

In addition to the core policy changes described above, the terms of the Agreement will ensure that potential customers are well-aware of these new policies and will ensure that they are consistently implemented by Mobility Works employees. (*Id.* at §§ 3.5.1 (publication), 3.4, 3.5.2, 3.6.1 (employee training and implementation).) The Agreement also contains provisions to monitor settlement compliance—including semi-annual submission of customer complaints to Plaintiffs' counsel—and to ensure that any disputes that arise during its two-year term are promptly resolved. (*Id.* at §§ 3.6.1.2, 3.6.2 (monitoring), § 4 (dispute resolution), § 5.1 (term).) Finally, for all members of the Settlement Class other than Plaintiffs, the terms of the Agreement provide for release only of the declaratory and injunctive claims brought and settled in this action—these class members' potential damages claims will not be affected; nor will any claims that might accrue after the expiration of the Agreement's term. (*Id.* at § 8.)

**1.      The Potential Costs, Risks, And Delays of Trial and Appeal Also Weigh In Favor Of Approval.**

In considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. As Plaintiffs point out, victory in this case was far from assured. Even if Plaintiffs had won a contested motion for class certification, prevailed on the merits, and fought off any appeals, that process would likely have taken years and cost hundreds of thousands of additional dollars in attorneys' fees and costs. In the interim, Plaintiffs and other drivers with disabilities who wanted to make full use of Mobility

---

[5]      The Agreement is attached to this Order.

1    Works' services would have been waiting for relief. Moreover, the end result of the settlement is

2    that Plaintiffs achieved the exact policy and practice changes they sought.

3        In short, the Court concludes the potential costs, risks, and delay associated with trial and

4    appeal weigh strongly in favor of final approval—particularly when considered together with the

5    excellent and timely relief achieved. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299,

6    318 (N.D. Cal. 2018) (granting final approval where "further litigation would have been costly and

7    uncertain and would have detrimentally delayed any potential relief for the Class," whereas the

8    relief provided by settlement was "timely, certain, and meaningful").

9        **2.      The Terms Of The Parties' Proposed Attorneys' Fee Award Also Weigh In
             Favor Of Approval.**
10

11       The statutes at issue in this case allow prevailing plaintiffs to recover their reasonable fees

12   and costs. *See* 42 U.S.C. § 12205; Cal. Civ. Code § 52(a). Under the Unruh Act, such an award is

13   mandatory. *Engel v. Worthington*, 60 Cal. App. 4th 628, 632-35 (1997); *Moralez v. Whole Foods

14   Mkt., Inc.*, No. C 12-01072 CRB, 2013 WL 3967639, at *2 (N.D. Cal. July 31, 2013). However,

15   in the context of a class settlement, "courts have an independent obligation to ensure that" any

16   award of fees and costs "is reasonable, even if the parties have already agreed to an amount." *In

17   re Bluetooth*, 654 F.3d at 941.

18       Defendants have agreed to pay Plaintiffs a total of $150,000.00 to compensate them for

19   attorneys' fees, expenses and costs incurred through final approval. (*See* Agreement at § 6.) For

20   the reasons set forth in the Order addressing Plaintiffs' motion for fees, the Court finds that this

21   award is reasonable.

22       **3.      The Adequate Representation Factor Weighs in Favor of Approval.**

23       In determining whether a class has been adequately represented, courts consider the same

24   "adequacy of representation" questions that are relevant to class certification. *See, e.g., In re

25   MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510, at *8 (N.D. Cal.

26   Mar. 28, 2019). Those questions are: "(1) do the named plaintiffs and their counsel have any

27   conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

28   prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Adequate

*United States District Court*
*Northern District of California*

5

1  representation of counsel is generally presumed in the absence of contrary evidence.  *Californians*

2  *for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

3  The Court has considered the Agreement, the submissions in support thereof, and in the absence of

4  contrary evidence, the Court finds that Plaintiffs and their counsel have adequately represented the

5  Settlement Class.  This factor weighs in favor of approval.

6         **4.**       **The Fact that the Agreement Is The Product of Arms-Length Negotiations**
                   **Weighs in Favor of Approval.**

7

8         There is no presumption of fairness that attaches to settlements achieved through arms-

9  length negotiations.[6]  *Roes 1-2*, 944 F.3d at 1049-50.  However, such negotiations can weigh in

10  favor of approval.  *See* Fed. R. Civ. P. 23(e)(2)(B).[7]

11         In considering this Rule 23 factor, the record demonstrates that the parties began settlement

12  discussions in mid-January of 2019.  On January 30, 2019, Plaintiffs sent Defendants a letter

13  describing the exact policy and practice changes they sought.  Defendants responded to that letter

14  in April 2019.  Over the ensuing months, the parties exchanged several more letters concerning

15  possible settlement.  Because the parties disputed several key terms, Plaintiffs simultaneously

16  prepared for trial and pursued necessary discovery, including through review of produced

17  documents, interrogatory responses, and a day-long 30(b)(6) deposition of Defendants' designee.

18  (*See* Declaration of Sean Betouliere, ¶¶ 15-17.)

19         On May 31, 2019, the parties conducted a full-day mediation with their appointed Northern

20  District panel mediator, Michael J. Loeb.  At this mediation, the parties were able to agree on the

21  core substantive terms of a settlement pertaining to injunctive relief, which were memorialized in

22  a signed memorandum of understanding; to conserve resources, they also agreed to stay discovery

23

24    [6]     The considerations encompassed by Rule 23(e)(b)(2) overlap with those contemplated by

25  "certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery
completed, and the stage of proceedings."  *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-

26  04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) (citing *Hanlon*, 150 F.3d at 1026).

27    [7]     The Advisory Committee has recognized, "the involvement of a neutral or court-affiliated
mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that

28  would protect and further the class interests."  Advisory Committee Notes to 2018 Amendments,
Fed. R. Civ. P. 23(e)(2).

United States District Court
Northern District of California

and litigation while working out the remaining details.  The parties exchanged draft settlement agreements and engaged in related calls and correspondence over the next several months; by November 1, 2019, they had resolved all major substantive issues and achieved a near-complete settlement draft.  On November 4, 2019, having reached agreement on injunctive relief for Plaintiffs and the proposed class, Plaintiffs sent Defendants an attorneys' fee demand.  Shortly thereafter the parties engaged in a further mediation session with Mr. Daniel Ben-Zvi of ADR Services, Inc., which led to the resolution of all remaining issues, including attorneys' fees and costs and incentive awards for Plaintiffs Giacopini and James.  The Agreement was fully executed on January 28, 2020.  (*Id.* ¶¶ 18-24.)

Where, as here, an agreement is the product of "serious, informed, non-collusive negotiations" conducted by experienced counsel over an "extended period of time," those facts will weigh in favor of approval.  *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007) (granting preliminary approval); *In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 WL 4219394, at *3 (N.D. Cal. Nov. 28, 2007) (granting final approval, and holding that "extended negotiations that culminated in the settlement indicate that the agreement here was reached in a procedurally sound manner").  The Court concludes the record in this case demonstrates that this factor weighs in favor of approval.

### 5.    The Fact that the Agreement Treats All Class Members Equitably Weighs in Favor of Approval.

The terms of the Agreement provide that Plaintiffs and the Settlement Class will receive exactly the same injunctive relief.  The one difference between Plaintiffs and the Settlement Class is that Plaintiffs seek a $2,000 incentive award, meant to compensate them for their time spent advocating on behalf of the Settlement Class.[8]  Because the terms of the Agreement treat Plaintiffs and all other "class members equitably relative to each other," the Court finds that this factor weighs in favor of approval.  *See* Fed. R. Civ. P. 23(e)(2)(D).

//

---

[8]    The request is addressed in the separate Order addressing Plaintiffs' motion for fees and costs.

United States District Court
Northern District of California

1

2

**B.    Adequate Notice Of The Parties' Proposed Settlement Has Been Provided To The Class, And There Have Been No Objections.**

3      Notice to a settlement class certified under Rule 23(b)(2) is within the Court's discretion.

4    Fed. R. Civ. P. 23(c)(2)(a), (e)(1).  Notice provided under Rule 23(e) must "generally describe[ ]

5    the terms of the settlement in sufficient detail to alert those with adverse viewpoint to investigate

6    and to come forward and be heard."  *Lane*, 696 F.3d at 826 (alteration in original) (quoting

7    *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

8      The parties attest they disseminated notice to the Settlement Class in accordance with the

9    Preliminary Approval Order.  The one minor exception was that dissemination to subscribers of

10   class counsel's newsletter was delayed by three business days as a consequence of disruptions

11   caused by COVID-19.  (*See* Joint Declaration of Sean Betouliere and Kelly Fox.)  The Court finds

12   the delay does not affect the adequacy of notice, as those newsletter subscribers still received

13   notice of the proposed settlement over 40 days in advance of this Court's May 5, 2020 deadline

14   for class member objections.

15     No objections have been submitted.  The "absence of a negative reaction" weighs in favor

16   of approval.  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010).

**C.    The Court Dismisses Plaintiffs' Complaint and Retains Jurisdiction to Enforce The Parties' Agreement.**

17

18

19     The Court GRANTS Plaintiffs' motion and approves the Agreement.  In accordance the

20   terms of that Agreement, which is attached to this Order and expressly incorporated herein, the

21   Court DISMISSES Plaintiffs' case with prejudice.  However, the Court retains jurisdiction to

22   enforce the Agreement and resolve any disputes that might arise during its term.  The Clerk shall

23   close this file.

24     **IT IS SO ORDERED.**

25   Dated: May 22, 2020

26   _____

27   JEFFREY S. WHITE
     United States District Judge

28